E. C. CODY, G. W. CODY, HATTIE CODY, GLENN CODY, JOHN CODY, LONAZELLE BREWER, GURNEY BREWER, IRENE CODY, BY HER NEXT FRIEND, HATTIE CODY, v. WILL ENGLAND.

(Filed 4 March, 1942.)

**1. Boundaries § 9f—**

Where the county surveyor, instead of actually surveying the lines and boundaries of an entry, adopts a known natural object as the beginning corner, and merely plats on paper the lines and boundaries, designating in part courses and distances to stakes, the stake corners are to be located by measuring the distance by horizontal and not by surface measure.

**2. Same—**

The statutes do not prescribe the method to be used in measuring the lines in surveying an entry. C. S., 7565-7567.

**3. Same—**

A county surveyor is a public officer, and until the contrary is shown, it will be presumed that in making a survey of an entry on which a grant has issued, he acted in accordance with his legal duty to lay off and survey the lands covered thereby, but this presumption is rebuttable.

**4. Same—**

The presumption that in early surveys of entries on which State grants were issued, particularly in the mountain sections, surface measure was used, does not apply when it appears that no actual survey was made but that the distances were platted by a "paper survey."

**5. Costs § 2a—**

Where, in an action in ejectment and for damages for cutting of timber, defendant files answer denying plaintiffs' title to the land in dispute, and verdict is entered in favor of plaintiffs, plaintiffs, as a matter of law, are not liable for any of the costs notwithstanding that upon the trial each party admitted the title of the other within the boundaries of their respective grants and the only controversy was as to the location of the boundary between their respective grants. C. S., 1241.

**6. Reference § 18—**

Where, upon the trial in the Superior Court upon appeal from the referee, judgment is entered in the Superior Court in favor of plaintiffs, entitling plaintiffs to recover costs in the trial, such recovery does not include compensation of the referee. C. S., 1244 (6).

APPEAL by plaintiffs and defendant from *Bobbitt, J.,* at September Term, 1941, of GRAHAM.

Civil action to recover land and for damages for alleged trespass, in which defendant files cross action for trespass.

Opinion on former appeal is reported in 216 N. C., 604; 5 S. E. (2d), 833. Basic contentions of parties are there set forth. Thereafter, order

of reference was entered at Spring Term, 1940, of the Superior Court of Graham County, and this appeal is from judgment on report of the referee.

Plaintiffs in their complaint allege ownership of a boundary of land in Graham County, North Carolina, comprising the descriptions in Grant No. 2275, issued 21 September, 1855, on State Survey No. 69, and in Grant No. 2684, issued 26 December, 1857, on entry No. 2335, of date 5 September, 1853, and allege that defendant has trespassed thereon, wrongfully and unlawfully cutting and removing timber therefrom, to their damage.

Defendant in his answer denies the allegations of the complaint, and, by way of further answer, avers that he is the owner and entitled to possession of a tract of land covered by Grant No. 2609, issued 17 December, 1857, on entry No. 4331, and that plaintiffs have trespassed thereon—wrongfully and unlawfully cutting and removing timber therefrom, to his damage.

Plaintiffs in reply filed admit that defendant is owner of the tract of land described in further answer when same is properly located according to its calls, courses and distances, but deny trespass thereon.

For convenience the referee, in the main, designates the lands by State survey or entry numbers rather than by grant numbers.

On the trial below it was, and is now, admitted by all parties that plaintiffs connect by proper chain of record title with the grants under which they claim as above stated, and that the controversy hinges upon their location. The referee finds the facts with relation to location, and it is stipulated by the parties that there is evidence to support his findings of fact.

Grant No. 2684, based on entry No. 2335, is for three hundred acres of land described as follows: "Beginning on a hickory, the southeast corner of William Davis' tract of land, and runs with the line of No. 72 East 160 poles to a beech, corner of said number; thence with the line of No. 74 South 300 poles to a stake; thence West 160 poles to a stake; thence North 300 poles to the Beginning."

Grant No. 2275, based on State Survey No. 69, is for one hundred thirty-nine acres land described as follows: "Beginning on a white oak and hickory in a hollow, the northeast corner of Tract No. 66, and runs East 138 poles to a hickory on a ridge, crossing the east fork at 80 poles; then South 162 poles to a stake; then West 138 poles to a stake, the southeast corner of No. 66; then North with the line of same to the Beginning."

It is admitted by all parties that the white oak and hickory indicated by the letter "F" on the map is the northwest and beginning corner of State Survey No. 69; that the point "E-1" as indicated on the map

(hickory gone, now stone) is the northeast corner of State Survey No. 69, the southwest corner of State Survey No. 72, and the beginning corner of entry No. 2335, and that a variation of three degrees and thirty minutes is required to properly run the line from "F" to the point "E-1."

And the referee finds that the southeast corner of State Survey No. 72 is the beech, now a stake in the cluster of white walnuts, as indicated on the court map by the letter "C," which beech the referee finds is also the second corner of entry No. 2335, and is reached by running from the point "E-1" south 87 degrees and thirty minutes east 168 poles by horizontal measure instead of "East 160 poles."

Now, with regard to the location of the remaining lines of entry No. 2335, the referee finds these pertinent facts: 1. The original State surveys, including those referred to in this action, were surveyed by horizontal measure. 2. While J. W. C. Piercy, the county surveyor, who certified to the plat and purported survey on which Grant No. 2684 issued, used surface measure as the method of measuring lines in surveying entries in Graham County, he did not actually survey the lines of entry No. 2335, and it is what is known as a "paper survey." In this connection the referee says, "I think it must be presumed, even though he did not make an actual survey, that surface measure was his method of measurement, and that such should govern," and he so finds. Plaintiffs except.

But recognizing that, as a matter of law, that in view of the fact that no actual survey of the entry on which the grant issued was originally made, and that the survey was a "paper survey," horizontal measure may be the correct method for measuring the remaining calls of this entry No. 2335, and to the end that the controversy may be settled, the referee makes alternate findings of fact pertaining thereto.

Thus, applying the surface measure method, the referee finds that running from the beech corner, found to be at the point "C," as indicated on the map, the location of remaining lines in succession would be: south two degrees west 299 poles and 7 links, surface measure, to the black oak, indicated on the map at the letter "K"; thence north 87 degrees 30 minutes west 160 poles to a point which would be slightly north of the letter "J," a sourwood, indicated on the court map; thence to the beginning. Plaintiffs except.

But, applying horizontal measure as the proper method for measuring the lines, the referee finds that, running from the beech corner, found to be at the point "C" as indicated on the map, the location of the remaining lines in succession would be: "South 2 degrees West 300 poles, horizontal measure, to the point indicated on the court map at the figure 6; thence North 87 degrees and 30 minutes West 160 poles, horizontal measure, to a point indicated on the court map at the figure 5, the termination of the Rogers line; thence to the point of beginning."

The referee further finds that the plaintiffs cut timber on the land lying west of the west line of entry No. 2335, located according to surface measurement and east of the west line of said entry located according to horizontal measurement, that is, east of the Rogers line, and are liable to defendant therefor. Plaintiffs except.

As to State Survey No. 69, Grant No. 2275: The referee finds that the southern boundary line, correctly located, runs from the point "M," as indicated on the court map, to the point "G"; that, therefore, from the northeast corner "E-1," admitted as above stated, the lines called for in the grant run: "South three degrees and 30 minutes East 162 poles to a point marked on the Court map by the letter 'M'; thence West to the point, formerly a Spanish Oak and Chestnut, indicated on the Court map by the letter 'G'; thence North three degrees and 55 minutes East 165 poles to the point of beginning."

The referee further finds that entry No. 4341, Grant No. 2609, under which defendant claims, was also a "paper survey," beginning at a point in the south boundary line of entry No. 69, 66 poles west of its southeast corner, and runs east with the south line of No. 69 to its southeast corner, indicated at "M"; thence extending that line east on the same degree until it strikes the west line of entry No. 2335 as located by the referee according to surface measurement; thence in a southeastern direction with the west line of entry No. 2335, as so located, and then various courses and distances indicated, to the southwest corner of entry No. 69, indicated by the letter "G" on the map, as found by the referee; thence with the south line of State Survey No. 69 to the place of beginning.

But the referee finds that if the court holds as a matter of law that horizontal measurement applies in locating entry No. 2335, the line of entry No. 4341 should be extended from the southeast corner of State Survey No. 69 east to the west line of entry No. 2335, as so located, that is, the Rogers line, and thence in a southeastern direction with it, and then various courses and distances to the beginning as above set forth.

The referee further finds that defendant, "under a *bona fide* belief, however, that he was within his own lines, cut timber belonging to plaintiffs in the small triangle indicated on the court map from 'M' to 'G' to 'V' to 'M,' of approximately one acre," north of the southern boundary line of State Survey No. 69, as located by the referee. For the value of timber so cut referee finds that defendant is indebted to plaintiffs.

Other findings of fact made by the referee are not material to this appeal.

Upon his findings of fact the referee concludes as matters of law: (1) That plaintiffs are the owners and entitled to possession of the land covered (a) by State Survey No. 69, Grant No. 2275, and (b) by entry

No. 2335, Grant No. 2684, except a portion conveyed to another, as each is located as shown in the findings of fact; (2) that plaintiffs are entitled to recover of defendant for the value of timber cut and removed by him from their land along the south line of State Survey No. 69; (3) that defendant is the owner and entitled to possession of the land covered by entry No. 4341, Grant No. 2609, located as shown in the findings of fact; and (4) that defendant is entitled to recover of plaintiffs the value of the timber cut and removed by them from the land lying between the locations of the west line of entry No. 2335, on the one hand, according to surface measurement, and on the other according to horizontal measurement.

Exceptions to certain findings of fact and conclusions of law as set forth in the referee's report were filed both by plaintiffs and by defendant, all of which were overruled by judge of Superior Court, and the findings of fact and conclusions of law, as made by the referee, were in all respects approved, adopted and confirmed.

In accordance therewith judgment was entered, in which costs were adjudged one-half against plaintiffs and one-half against defendant.

From judgment so rendered both plaintiffs and defendant appeal to Supreme Court and assign error.

*R. L. Phillips and McKinley Edwards for plaintiffs, appellants.*

*R. B. Morphew, T. M. Jenkins and S. W. Black for defendant, appellant.*

### PLAINTIFFS' APPEAL.

WINBORNE, J. Decision here turns upon the answers to these two questions: First. Where the county surveyor, instead of actually surveying the lines and boundaries of an entry, adopts a known natural object as the beginning corner, and merely plats on paper the lines and boundaries, designating in part courses and distances to stakes, are the stake corners to be located by measuring the distance by surface measure or by horizontal measure? The answer is "by horizontal measure."

The statute in effect at the date of entry No. 2335, 5 September, 1853, in question here, provides that every county surveyor, upon receiving the copy of the entry and order of survey for any claim of lands, shall, as soon as may be, lay off and survey the same, agreeably to this act, and that no surveys shall be made without chain carriers, who shall be sworn to measure justly and truly, and to deliver a true account thereof to the surveyor, and who shall actually measure the land surveyed. Revised Statutes of North Carolina, 1836-7, chapter 42, section 14. See, also, Revised Code of North Carolina, 1854, chapter 42, section 12; C. S., sections 7565-7567; *Redmond v. Mullenax,* 113 N. C., 505, 18 S. E., 708;

*Higdon v. Rice,* 119 N. C., 623, 26 S. E., 256; *Lumber Co. v. Hutton,* 152 N. C., 537, 68 S. E., 2. But the statute does not prescribe the method to be used in measuring the lines in surveying an entry.

It is presumed, until the contrary is shown, that a public officer, as is a county surveyor (R. S., chapter 42, sections 4-6, Constitution of North Carolina, Art. VII, sec. 1), acts in compliance with his legal duty, and that his proceedings are regular. *Clifton v. Wynne,* 80 N. C., 145; *Neal v. Nelson,* 117 N. C., 393, 23 S. E., 428; *Gregg v. Comrs.,* 162 N. C., 479, 78 S. E., 301. Thus, where a county surveyor purports to act under an order of survey of an entry on which a grant has issued, it may be presumed that he acted in accordance with his legal duty to lay off and survey the lands covered thereby.

This, however, is a rebuttable presumption.

Furthermore, while there is authority in this State, *Duncan v. Hall,* 117 N. C., 443, 23 S. E., 362, and *Stack v. Pepper,* 119 N. C., 434, 25 S. E., 961, to the effect that there is a presumption, founded on custom sanctioned by judicial opinion, that surveyors used surface measure in the early surveys of entries on which grants were issued, particularly in the mountain sections, there is no factual basis for such presumption where it appears, as here, that no survey was made. The custom of a surveyor to use surface measure in surveying entries has no probative value in cases where no actual survey was made. In such event the rule of correct measurement must be applied. The authorities agree that horizontal measure is the correct and accurate method of measurement in the survey of land. 8 Am. Jur., 794, Boundaries, sec. 67; *Gilmer v. Young,* 122 N. C., 806, 29 S. E., 830; *McEwen v. Den,* 24 Howard, U. S., 242, 16 L. Ed., 672. Manifestly, a line platted on the plane of paper is horizontal.

The second question: Where, in an action to recover land and for trespass thereon by cutting timber, defendant in answer filed denies plaintiffs' title thereto, and files cross action averring that plaintiffs have trespassed on his land, to which plaintiffs in reply disclaim title to any of defendant's land, properly located, and deny trespass thereon, and it is found that plaintiffs' title is valid, and that defendant, though under *bona fide* belief that he was within his own lines, cut timber on a small portion of plaintiffs' land, and that plaintiffs have not cut any timber on defendant's land, are plaintiffs as a matter of law liable for any of the costs of the action? The answer is "No." C. S., 1241; *Moore v. Angel,* 116 N. C., 843, 21 S. E., 699; *Vanderbilt v. Johnson,* 141 N. C., 370, 54 S. E., 298; *Bryan v. Hodges,* 151 N. C., 413, 66 S. E., 345; *Swain v. Clemmons,* 175 N. C., 240, 95 S. E., 489; *In re Hurley,* 185 N. C., 422, 117 S. E., 545.

The statute, C. S., 1241, provides that costs shall be allowed of course to the plaintiff, upon a recovery, in an action for the recovery of real

property, or when a claim of title to real property arises on the pleadings, or is certified by the court to have come in question at the trial. This does not include compensation of referees.   C. S., 1244 (6).

On the other hand it is provided that, unless plaintiff be entitled to costs in actions mentioned in C. S., 1241, costs shall be allowed as of course to the defendant.

In the present case the defendant by the denial in his answer put the title of the plaintiffs in issue.  The issue is found in favor of plaintiffs. This entitles them to costs.  It makes no difference, as was stated in *Swain v. Clemmons, supra,* that the defendant upon the trial below admitted plaintiffs' title to the lands covered by the grants under which they claim, and only controverted the location of some of the lines of those grants.   The admission came too late for the purpose of saving the costs.

Other assignments of plaintiffs, given due consideration, fail to affect the decision here reached, that is, that plaintiffs are entitled to judgment (1) declaring them to be the owners and entitled to possession of the land covered by entry No. 2335, Grant 2684, on location shown in alternate finding of fact of the referee in applying horizontal measure, except the portion indicated in judgment rendered below; (2) striking out award of damages to defendant for value of timber cut by plaintiffs within the lines of said entry so located, and (3) for costs, exclusive of compensation to referee.

In these respects the judgment below against plaintiffs is
Reversed.

## DEFENDANT'S APPEAL.

Upon the facts appearing in the record on this appeal, the challenge of defendant to that part of judgment below pertaining to costs is without merit.   However, judgment will be corrected to conform to decision on plaintiffs' appeal.

Other assignments are untenable.
Affirmed.